IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER ANN DONOVAN,<br><br>    Plaintiff,<br><br>  v.<br><br>J. A. PHILLIPS,<br><br>    Defendant. | No. 3:14-cv-00680-CRB<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Officer Joshua Phillips ("Defendant") initiated a traffic stop on a vehicle driven by Donna Donovan in order to perform a Driving Under the Influence ("DUI") investigation. Jennifer Donovan ("Plaintiff"), Donna's partner, exited the vehicle and approached Defendant when he made the determination to arrest Donna for a suspected DUI. Defendant told Plaintiff to return to her vehicle and, when she refused, Defendant placed Plaintiff in a control hold, took her to the ground, and placed her under arrest. Plaintiff's Complaint (dkt. 1) alleges excessive force, gender discrimination, and bad-faith arrest. Now before this Court is Defendant's motion for summary judgment. Mot. Summary Judgment (dkt. 34). At a hearing on December 12, 2014, this Court granted Plaintiff's motion for a continuance pursuant to Fed. R. Civ. P. 56(d) to allow Plaintiff to investigate and brief specific further evidence she alleged was necessary for a full and proper determination of the summary judgment issues. Plaintiff has now filed a notice of intent not to submit any supplemental

1 briefing relating to additional discovery, asserting that the best and only neutral evidence was
2 already before the Court. See Notice of Intent Not To File (dkt. 50). Accordingly, the Court
3 considers the evidence and briefing and hereby GRANTS Defendant's motion for summary
4 judgment on all claims.

**I.  BACKGROUND**

On October 21, 2012, Plaintiff, an off-duty peace officer[1], was a passenger in a vehicle driven by her partner, Donna, traveling on Route 116 near Guerneville, California. Compl. (dkt.1) ¶¶ 5–6. Defendant initiated a traffic stop on the vehicle, suspecting that Donna was driving under the influence of alcohol. Id. Defendant recorded the incident on the Mobile Video Audio Recording System ("MVARS"), with the resulting video being part of the summary judgment evidence. See generally MVARS (dkt. 36-1).

Donna exited the vehicle and participated in a field sobriety test conducted by Defendant outside of the view of the MVARS while Plaintiff remained in the vehicle. Compl. ¶ 6; see generally MVARS. Plaintiff opened the passenger side door while the test was in progress. MVARS at 12:15. Plaintiff shut the door to the vehicle after Defendant requested several times that she do so. MVARS at 14:57–15:08. After Plaintiff opened the door to the vehicle, but before Plaintiff closed it, Donna refused to perform a one-leg stand test that Defendant ordered. MVARS at 14:54. Donna finally agreed to perform an additional test but refused to take the Preliminary Alcohol Screening ("PAS") test. MVARS at 15:15–16:15. Defendant explained that if Donna refused to take the PAS test, he would have to take her to jail for a suspected DUI. MVARS at 16:15–16:55. Donna called to Plaintiff for help. Compl. ¶ 6; MVARS at 16:59.[2]

Plaintiff exited the vehicle and took several steps forward toward Defendant and Donovan. Compl. ¶ 6; MVARS at 17:01–17:12. Defendant told Plaintiff to get back in and

---

[1] At the time of the incident, Plaintiff was a "POST-certified police officer who worked as a State Park Superintendent I at the Department of Parks and Recreation at all relevant times." Compl. (dkt. 1) ¶ 6; Opp'n (dkt. 39) at 1; Donovan Decl. (dkt. 39-5) ¶ 2.

[2] Plaintiff claims that Defendant became aggressive with Donna, prompting Donna to call for help. Opp'n at 2. The PAS test occurred outside of the MVARS view, but the audio suggests that Defendant did not become aggressive with Donna. See MVARS at 16:15–17:00.

2

shut the door to the vehicle several times as he approached. MVARS at 17:01–17:12. Plaintiff stopped and turned herself at an angle to Defendant as he approached, her hands raised slightly at her side, palms up.[3] Id. Defendant reached Plaintiff approximately two seconds later and placed Plaintiff in a control hold, which involved gripping Plaintiff's right wrist. Compl. ¶ 6; MVARS at 17:12–17:15. Defendant slowly twisted Plaintiff's arm to his left, which caused Plaintiff to twist her body to her right in order to avoid pain in her arm and wrist as Defendant applied pressure. Id. Defendant, while slowly twisting, forced Plaintiff's arm toward the ground, which caused Plaintiff's knees to bend as she rolled over onto the ground. Id. Defendant's actions resulted in Plaintiff sustaining a sprained rotator cuff. Compl. ¶ 6; Donovan Decl. at ¶ 7.

Plaintiff sued Defendant, and Does 1–20, for excessive force, gender discrimination, and bad-faith arrest. See generally Compl. Plaintiff moved for partial summary judgment, arguing that there was no genuine issue of material fact regarding the excessive force cause of action. See generally Plaintiff's Mot. Summary Judgment (dkt. 29). This Court denied Plaintiff's motion after reviewing the MVARS recording and determining that a reasonable fact-finder could find for Defendant. See generally Order re Plaintiff's Mot. Summary Judgment (dkt. 31).

Defendant now moves for summary judgment on all causes of action. At a hearing on the summary judgment motion on December 12, 2014, this Court granted Plaintiff's motion for a continuance under Fed. R. Civ. P. 56(d) to allow Plaintiff to investigate and brief specific evidence she alleged was available and necessary for her gender discrimination claims. Subsequently, Plaintiff filed a notice of intent not to submit any supplemental briefing relating to additional discovery, asserting that the best and only neutral evidence was already before the Court. See Notice of Intent Not To File.

## II. LEGAL STANDARD

A court shall grant summary judgment if the movant shows that there is no genuine

---

[3] Defendant characterizes this as a "bladed" stance, which is a potentially argumentative or combative posture. Mot. Summary Judgment at 4. Plaintiff characterizes this as an inquisitive pose. See Compl. ¶ 6.

1  dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.
2  R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which
3  a reasonable fact-finder could find for the non-moving party, and a dispute is "material" only
4  if it could affect the outcome of the suit under governing law. See Anderson v. Liberty
5  Lobby, Inc., 477 U.S. 242, 248– 49 (1986). The burden is on the moving party to
6  demonstrate that there is no genuine dispute with respect to any material fact and that it is
7  entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

8   A court must view the evidence in the light most favorable to the non-moving party
9  and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255. "Where the
10 record taken as a whole could not lead a rational trier of fact to find for the non-moving
11 party, there is no 'genuine issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475
12 U.S. 574, 587 (1986). "When opposing parties tell two different stories, one of which is
13 blatantly contradicted by the record, so that no reasonable jury could believe it, a court
14 should not adopt that version of the facts for purposes of ruling on a motion for summary
15 judgment." Scott v. Harris, 550 U.S. 372, 380 (2007) (relying on the facts as depicted by a
16 videotape, which contradicted the non-movant's version of events).

17  In order to carry its burden of production on a motion for summary judgment, "the
18 moving party must either produce evidence negating an essential element of the nonmoving
19 party's claim or defense or show that the nonmoving party does not have enough evidence of
20 an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire &
21 Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) (citing High Tech Gays v.
22 Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir.1990)). In order to carry its
23 ultimate burden of persuasion on the motion, the moving party must persuade the court that
24 there is no genuine issue of material fact." Id. (citing High Tech Gays, 895 F.2d at 574). If
25 the moving party satisfies its initial burden of production, then the non-moving party may not
26 rest upon mere allegations or denials of the adverse party's evidence, but instead must
27 produce evidence that shows there is a genuine issue of material fact for trial. Id.
28 //

**III. DISCUSSION**

Defendant makes two overarching arguments in his motion for summary judgment. First, Defendant argues that he is entitled to summary judgment on Plaintiff's first and second causes of action, for bad-faith arrest and excessive force, because he is entitled to qualified immunity and no genuine issue of material fact exists that could defeat his qualified immunity defense. See Mot. Summary Judgment at 7–15. Second, Defendant argues that he is entitled to summary judgment on Plaintiff's third cause of action, gender discrimination, because Plaintiff has submitted no evidence supporting her claim. Id. Plaintiff argues that the evidence on record is sufficient to raise genuine issues of material fact for trial. See generally Opp'n (dk. 39).

**A. Factual Disputes**

Because the Court must view the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in that party's favor, the Court first identifies all existing factual disputes. Celotex Corp., 477 U.S. at 323; Anderson, 477 U.S. at 255. The parties here largely agree on the facts and their versions of the events differ significantly at only two points. First, the parties dispute whether Plaintiff ever told Donna not to comply with Defendant's orders. Compare Opp'n at 2, with Mot. Summary Judgment at 4. Second, the parties dispute whether Plaintiff's stance, after exiting the vehicle and approaching Defendant, was argumentative or inquisitive. Compare Compl. ¶ 6 and Mot. Summary Judgment at 4, with Opp'n at 2. Viewing the evidence in the light most favorable to the non-moving party where not blatantly contradicted by the record, the Court agrees that reasonable fact-finders could dispute whether Plaintiff told Donna not to comply with Defendant's commands[4] and whether Plaintiff's stance was inquisitive or argumentative; accordingly, the Court resolves these factual disputes in Plaintiff's favor for purposes of the instant motion. See Anderson, 477 U.S. at 255.

//

---

[4] Although it sounds on the MVARS video like Plaintiff does tell Donna not to comply, the audio is difficult to comprehend at that point in the recording. See MVARS at 14:54.

5

### B. Qualified Immunity

Defendant's first argument is that he is entitled to qualified immunity as to Plaintiff's bad-faith arrest and excessive force claims. Mot. Summary Judgment at 7–8, 10–14. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A court faced with a claim of qualified immunity considers whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001) (citation omitted). Where there is a "clearly established" constitutional right, the Court must determine whether "[t]he contours of [that] right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. This inquiry may be conducted in whatever sequence is most beneficial in each particular case. See Pearson, 555 U.S. at 236.

#### 1. Bad-faith Arrest

Defendant argues that he is entitled to qualified immunity as to Plaintiff's bad-faith arrest claim because he had probable cause to believe that Plaintiff was violating Penal Code section 148(a)(1), "willfully resist[ing], delay[ing], or obstruct[ing] . . . a peace officer . . . in the discharge or attempt to discharge any duty," by refusing to stay in, or return to, her car when ordered. See Young v. County of Los Angeles, 655 F.3d 1156, 1169–70 (9th Cir. 2011)).

In United States v. Williams, 419 F.3d 1029, 1030–31 (9th Cir. 2005), the Ninth Circuit held that the Fourth Amendment allows an officer to order a passenger who has exited an automobile during a traffic stop to reenter the vehicle. Such an order is only a minimal intrusion upon the individual's liberty interests "because only the passenger's location during the stop is affected." Williams, 419 F.3d at 1033). "Balanced against that limited intrusion is the important 'value of giving officers control over the movement of people involved in a traffic stop [in order to] limit[ ] the risk of danger to the police."

Young, 655 F.3d at 1169 (quoting Williams, 419 F.3d at 1034). Accordingly, "a police officer issuing a traffic citation does not violate the Fourth Amendment by ordering" a driver or passenger to reenter the vehicle for the duration of a traffic stop. Id. at 1169–1170.

As in Young and Williams, the record here shows that Defendant's order that Plaintiff reenter her vehicle "was a lawful one that, under § 148(a)(1)," Plaintiff was required to obey. See Young, 655 F.3d at 1170. The undisputable evidence provided by the MVARS video demonstrates that Defendant told Plaintiff to reenter the vehicle several times, which Plaintiff ignored and instead stopped and turned herself at an angle to Defendant as he approached. MVARS at 17:01–17:12. Plaintiff's only reply, without supporting evidence and without addressing the clear sequence of events on the MVARS video, is that Defendant arrested Plaintiff, after she was on the ground, to justify his use of force. Opp'n at 11–12.

On this evidence, there is no genuine dispute of material fact that Defendant had probable cause to arrest Plaintiff for a violation of § 148(a)(1). Plaintiff had no constitutional right, and certainly no clearly established one, to disregard Defendant's lawful orders or to do so without the consequence of arrest under these circumstances.[5] Defendant is therefore entitled to qualified immunity and has met his initial burden of negating an essential element of Plaintiff's claim. See Saucier, 533 U.S. at 201–05; Nissan, 210 F.3d at 1102. Because there is no evidence on this record showing a genuine issue of material fact for trial, this Court GRANTS Defendant's motion for summary judgment as to Plaintiff's bad-faith arrest cause of action.

### 2. Excessive Force

Defendant also argues that he is entitled to qualified immunity as to Plaintiff's excessive force claim. This Court analyzes claims for excessive force under the Fourth Amendment's prohibition against unreasonable seizures using the framework articulated in Graham v. Connor, 490 U.S. 386 (1989). Young, 655 F.3d at 1161. "The reasonableness of

---

[5] Plaintiff's opposition suggests that Defendant is not entitled to qualified immunity as to the bad-faith arrest claim because it is a pretext for Defendant's use of excessive force. Opp'n at 11–12. Use of excessive force does not invalidate an officer's probable cause to arrest. See, e.g., Smith v. City of Hemet, 394 F.3d 689, 696 (9th Cir. 2005).

7

a seizure turns on 'whether . . . officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them,'" which this Court determines "by balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Id. (quoting Graham, 490 U.S. at 396–97).

In conducting this inquiry, the Court first assesses "the gravity of the particular intrusion on Fourth Amendment interests." Id. (quoting Miller v. Clark County, 340 F.3d 959, 964 (9th Cir.2003)). The Court then looks to "the importance of the government interests at stake," and finally balances "the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." Id. (quoting Miller, 340 F.3d at 964). Among all the factual circumstances at issue, the court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The analysis "must embody allowance for the fact that police officers are often forced to make split-second judgements in circumstances that are tense, uncertain, and rapidly evolving." Id. at 396–97.

If this inquiry concludes that, taking all facts in the light most favorable to the non-moving party, the Defendant's conduct amounts to a violation of a constitutional right, the Court also must determine whether the defendant is entitled to qualified immunity by assessing whether "the right at issue was clearly established at the time of defendant's alleged misconduct." Young, 655 F.3d at 1161 (quoting Pearson, 555 U.S. at 223).

### i.   Nature and Quality of Intrusion

The Court first assesses the "quantum of force used to arrest [Plaintiff] by considering the type and amount of force inflicted" Deorle v. Rutherford, 272 F.3d 1272, 1283 (9th Cir. 2001) (quotation omitted). Plaintiff alleges that Defendant "violently forced her to the ground[,]" which "sprained [Plaintiff's] right rotator cuff." Compl. ¶ 6; Donovan Decl. at ¶ 7. The MVARS recording shows that Defendant gripped Plaintiff by the wrist, applied pressure, and twisted her arm, which forced her to roll onto the ground. MVARS at

8

17:12–17:15. The only evidence in the record on this issue suggests that this "control hold" maneuver is among the lowest levels of force peace officers are trained to use when a subject does not respond to verbal commands. See Ch. 2, Force Options (dkts. 34-5, 34-6) at DEF000071-107. No evidence in the record establishes that the force used here approaches the severity of the intermediate, or greater, levels of force used in the cases that Plaintiff cites. See, e.g., Young, 655 F.3d at 1165–66 (officer approached the seated plaintiff from behind, pepper sprayed him, and struck him multiple times with a baton)). Likewise, no evidence in the record suggests that the force used caused, or was capable of causing, grave physical injury. Cf. Deorle, 272 F.3d at 1279. Accordingly, the evidence on this record conclusively establishes that Defendant employed a level of force that is low on the continuum of tactics available to police officers. Cf. id. at 1279–1280 (evaluating the use of a lead-filled, "less-lethal" shot fired from a 12-gauge shotgun). In light of the fact, previously discussed, that Plaintiff had no legal right under § 148(a)(1) to disregard Defendant's orders to reenter her vehicle, and that a low level of force was used to effect compliance, the Court concludes that the intrusion on Plaintiff's Fourth Amendment interests was minimal.

### ii. Government Interest at Stake

In evaluating the government interests at stake in an excessive force claim, the Court ultimately seeks to determine objectively "the amount of force that is necessary in a particular situation." Deorle, 272 F.3d at 1280 (quoting Graham, 490 U.S. at 396–97). This Court measures the governmental interests at stake by evaluating a range of factors, including "'(1) the severity of the crime at issue, (2) whether the suspect pose[d] an immediate threat to the safety of the officers or others . . . (3) whether he [was] actively resisting arrest or attempting to evade arrest by flight,' and any other 'exigent circumstances [that] existed at the time of the arrest.'" Deorle, 272 F.3d at 1280 (quoting Headwaters Forest, 240 F.3d 1185, 1198–99 (9th Cir. 2000)). Of these factors, "the most important is whether the individual posed an immediate threat to officer or public safety." Young, 655 F.3d at 1163 (citing Smith, 394 F.3d at 702).

1    Here, these factors decisively favor a finding that Defendant did not use excessive
2 force upon Plaintiff here. Even viewing the few factual disputes in Plaintiff's favor, as
3 previously discussed, no evidence in the record contradicts the evidence regarding the
4 inherent danger of the incident as a whole. Plaintiff's only support is a bare allegation that
5 she and Donna "posed no threat to anyone's safety[,]" such that there was no "objective
6 justification to establish" an imminent threat. Opp'n at 8, 11; Phillips Depo. at 104. The
7 declaration of Roger Clark argues that Defendant had no objective basis to use force because
8 Plaintiff said nothing of an aggressive nature, did not take an aggressive posture, had no
9 visible weapons, and was "obviously in a posture of inquiry." Clark Decl. (dkt. 39-6) ¶ 10.
10 But the Court has already given Plaintiff the benefit of the doubt to the extent Clark argues
11 factual disputes, and Clark's legal conclusions simply mirror Plaintiff's arguments while
12 disregarding the totality of the circumstances faced by Defendant. The undisputed evidence
13 shows that Defendant, alone, was faced with controlling two potentially intoxicated and
14 unrestrained individuals refusing to comply with lawful orders on the side of a highway at
15 night. See generally MVARS; see also Nissan, 210 F.3d at 1102. Defendant was put in the
16 position of making a "split-second judgments—in [a] circumstance[] that [was] tense,
17 uncertain, and rapidly evolving—about the amount of force that is necessary in [that]
18 particular situation." Saucier, 533 U.S. at 205. On this record, there is no genuine question
19 of material fact that Defendant had a substantial government interest in taking control of a
20 tense and dangerous situation to protect Plaintiff, Donna, passing motorists, and himself from
21 the hazards that Plaintiff and Donna created.

22    Alternatively, Plaintiff argues that no force was justified because Defendant failed to
23 first warn Plaintiff of his intention to use force.[6] See, e.g., Deorle, 272 F.3d at 1284
24 ("[W]arnings should be given, when feasible, if the use of force may result in serious injury,

---

[6] Plaintiff also argues that Defendant was required to inform her that she was under arrest before using force. California Penal Code § 841 states that "The person making the arrest must inform the person to be arrested of the intention to arrest him . . . except when . . . the person to be arrested is actually engaged in the commission of . . . an offense . . . ." (emphasis added). As previously discussed, the MVARS recording makes it clear that Plaintiff was engaged in a violation of Penal Code section 148(a)(1). MVARS at 17:01–17:15.

10

and . . . the giving of a warning or the failure to do so is a factor to be considered in applying the Graham balancing test.") (emphasis added).  No evidence in the law or on this record supports Plaintiff's contention that Defendant was required to warn her before employing any force at all to take control of this situation.  In Young, the Ninth Circuit observed that the defendant could have warned or simply handcuffed the seated plaintiff, whom had been pulled over for failure to wear a seatbelt and whom admittedly posed no immediate threat to the defendant or others, before employing a dangerous intermediate use of force.  Id. at 1165–66.  In sum, "no safety concern whatsoever appeared to have justified" the defendant police officer's decision in that case to employ substantial force.  Id. at 1164.  Here, in sharp contrast, Defendant reasonably could have believed that Plaintiff posed a danger to herself and others by refusing lawful orders to reenter her vehicle in the context of a highway-side night traffic stop involving two unrestrained and potentially intoxicated individuals.  Furthermore, Plaintiff was subjected to only a low level of force, such that the Defendant did not bypass the number of less painful measures to control the situation that the Ninth Circuit observed in Young.  See id. at 1166 (citing Bryan v. MacPherson, 630 F.3d 805, 831 (9th Cir. 2010)).

### iii.   Weighing the Conflicting Interests

Ultimately, the severity of "the force which is applied must be balanced against the need for that force."  Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1057 (9th Cir. 2003); Young, 655 F.3d at 1166 ("We conclude our analysis of whether the force used by [the defendant] was reasonable by balancing "the gravity of the intrusion on the individual against the government's need for that intrusion.") (citation omitted). "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' however, its proper application requires careful attention to the facts and circumstances of each particular case."  Graham, 490 U.S. at 396 (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)).  And the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. (citing Terry v. Ohio, 392 U.S. 1,

11

20–22 (1968)).

It is beyond dispute on this summary judgment evidence that the use of a control hold was an objectively reasonable use of force here. When confronted, Defendant acted quickly, using minimal force, to safely take control and ensure the safety of everyone involved. MVARS at 17:02–17:15. In Forrester v. City of San Diego, 25 F.3d 804, 806–07 (9th Cir. 1994), the Ninth Circuit held that the use of pain compliance techniques on non-resisting protestors, in order to quickly disperse and remove them with the least risk of injury to the officers or others, was objectively reasonable. Additionally, in Eberle v. City of Anaheim, 901 F.2d 814, 820 (9th Cir. 1990), the Ninth Circuit held that using a finger control hold to remove a belligerent spectator from a potentially dangerous situation was objectively reasonable. Like in Forrester and Eberle, the evidence about the incident now before the Court shows a similarly dangerous and volatile situation because two non-compliant, potentially intoxicated individuals were arguing with Defendant at night on the side of a highway and posed a threat to themselves, Defendant, and the public. See generally MVARS. Undisputed evidence in the record shows that: (1) Plaintiff had previously been told, multiple times, to stay in the vehicle and shut the door; (2) Plaintiff failed to obey or respond to Defendant's order to return to the vehicle; (3) Plaintiff advanced toward Defendant; (4) Plaintiff assumed a sideways stance; (5) Defendant was forced to turn his back to Donna, whom he believed was intoxicated; (6) Defendant knew that Plaintiff was a peace officer and that she might have a weapon; (7) the incident took place at night on the side of a highway. See, e.g., Phillips Depo. at 64–66; MVARS at 12:15–17:12. Additionally, the MVARS recording shows that, while Defendant was focused on arresting and securing Plaintiff, Donna actually wandered down the road, past the front of her vehicle, and briefly out of sight. MVARS at 21:15. This evidence establishes that the situation was volatile and that both Plaintiff and Donna were acting unpredictably in a way that presented a potential danger to themselves or others.

Against this backdrop that satisfies Defendant's burden to show he is entitled to summary judgment, Plaintiff offers no evidence that creates a genuine issue of material fact

12

for trial. See Saucier, 533 U.S. at 201–05; Celotex Corp., 477 U.S. at 323; Nissan, 210 F.3d at 1102. Having determined that the force used against Plaintiff was low and the government interest in the use of that force was significant, the Court concludes that, taking the facts in the light most favorable to Plaintiff, the force that Defendant used was not excessive and did not violate the Fourth Amendment. Cf. Young, 655 F.3d at 1166. The Court sees no evidence that comes close to raising a genuine question of material fact as to whether Plaintiff's constitutional rights were violated. And even assuming, arguendo, that Defendant's conduct violated a constitutional right, it cannot be said that the right was so clearly established as to put a reasonable officer in Defendant's position on notice that his actions were unlawful. See Hall v. Hayward Police Dep't, No. 12-2340, 2013 WL 5313409 CRB, at *5 (N.D. Cal. Sept. 23, 2013) (citing Saucier, 533 U.S. at 201–06); Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). Accordingly, Defendant is entitled to qualified immunity, and the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's excessive force cause of action.

### C.  Gender Discrimination

Defendant's second argument is that he is entitled to summary judgment as to Plaintiff's gender discrimination cause of action because, while Plaintiff has stated that she was discriminated against because she is a woman, Plaintiff has not produced any evidence to support her claim. Mot. Summary Judgment at 14–15; see Celotex Corp., 477 U.S. at 325 (Defendant need only point out "that there is an absence of evidence to support the nonmoving party's case").

Plaintiff's Complaint and summary judgment record contained no evidence whatsoever to support her claim of gender discrimination. Nevertheless, at the hearing on the instant motion for summary judgment, this Court granted Plaintiff's request for a continuance to enable Plaintiff to investigate and brief any evidence of citizen complaints filed against Defendant in order to demonstrate discriminatory intent. Plaintiff represented to this Court that a continuance would enable her to create a genuine issue of material fact

13

regarding discriminatory intent by allowing her to gather citizen complaints, which she had reason to believe existed and would show Defendant's proclivity to use excessive force in similar situations, disparate treatment of women, disparate treatment of people who are, or are suspected of being, under the influence, and/or motive, intent, opportunity, and/or credibility. After this Court granted the continuance, Plaintiff filed a notice of intent not to submit any supplemental briefing relating to additional discovery, asserting that the best and only neutral evidence was already before the Court. See Notice of Intent Not To File.

Section 1983 selective enforcement claims are evaluated in accordance with "ordinary equal protection standards." Wayte v. United States, 470 U.S. 598, 608 (1985). To prevail, Plaintiff must show that Defendant's conduct had "both a discriminatory effect and a discriminatory motivation." Richards v. Los Angeles, No. 06-55593, 2007 WL 4513583, at *2 (9th Cir. Dec. 21, 2007) (emphasis added) (citing Wayte, 470 U.S. at 608); see also Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000). In order to establish discriminatory effect, Plaintiff must identify the classes to be compared in order to "isolate the factor allegedly subject to impermissible discrimination." Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995) (internal citation omitted).

Here, the Complaint states only that "Plaintiff was denied equal protection because she is a woman." Compl. ¶ 15. Plaintiff argues that the MVARS recording raises genuine issues of material fact regarding Defendant's discriminatory intent but, beyond this mere allegation, Plaintiff has produced no evidence that this is so. Plaintiff has also failed to produce evidence demonstrating a discriminatory effect. In an apparent attempt to identify the class at issue, Plaintiff states that Defendant "has pulled over numerous off-duty officers, possibly up to 99 . . . [y]et he has only arrested two: one female ([P]laintiff) and one male (probation officer for a DUI)."[7] Opp'n at 2 (citing Phillips Depo at 41–43). Plaintiff argues that "[u]nlike other fellow male officers [Defendant] had stopped on the road, . . . Officer

---

[7] Plaintiff also states that in "one out of four traffic stops during which [Defendant] determined there was a violation, he issued a verbal warning in lieu of anything further." Id. (citing Phillips Depo at 35). However construed, this group has little in common with Plaintiff, who was only a passenger in a car and whose driving companion was pulled over for the serious offense of suspected DUI.

14

Phillips used force on [Plaintiff]." Id. at 13.

The Court sees no evidence of gender discrimination in any of Plaintiff's unsubstantiated and self-serving allegations. Even giving the Plaintiff the benefit of the doubt in construing Plaintiff's proposed comparison group as "fellow male officers [Defendant] ha[s] stopped on the road," see Opp'n at 2, this group is not similarly situated to Plaintiff. See Freeman, 68 F.3d at 1187 (Plaintiff must identify the classes at issue in order to establish a discriminatory effect.). Plaintiff was not pulled over, but was instead arrested for a violation of § 148(a)(1). MVARS at 17:01–17:12. Moreover, assuming arguendo that the suggested class is similarly situated, and that Plaintiff's information is accurate, Defendant has arrested exactly one male off-duty officer and one female off-duty officer. See Phillips Depo at 41–43. This evidence create no basis on which a reasonable fact-finder could determine that Defendant's actions displayed the discriminatory intent or discriminatory effect required for Plaintiff's § 1983 selective enforcement claims on the basis of gender discrimination. See Richards, 2007 WL 4513583, at *2 (citation omitted). Despite the continuance granted for this very purpose, Plaintiff was unable to muster any evidence to support her claim or create a genuine issue of fact for trial. Accordingly, the Court GRANTS Defendant's motion for summary judgment on Plaintiff's gender discrimination claim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment on all claims.

**IT IS SO ORDERED.**

Dated: March 4, 2015

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE